UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOU CHINNA BENT-CRUMBLEY,

       Plaintiff,

v.                                    Civil Case No. 17-11767
                                    Honorable Linda V. Parker

MEAGAN J. BRENNAN, Postmaster
General of the United States Postal
Service,

       Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

      This is a disability discrimination case filed under the Rehabilitation Act of 1973, as amended, 42 U.S.C. §§ 701-796*l*.[1]  Plaintiff Lou Chinna Bent-Crumbley ("Plaintiff") is a former employee of the United States Postal Service ("Postal Service") who was terminated during her probationary period.  Defendant Meagan J. Brennan is the Postmaster General of the United States.  The matter is presently before the Court on Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  The motion has been fully briefed.  Finding the facts

---

[1] Plaintiff also refers to the Americans with Disabilities Act ("ADA") in her Complaint.  (*See* Compl. at 4, ECF No. 1 at Pg ID 4.)  The ADA does not provide a claim for relief for a postal employee, however, because the United States is excluded from its definition of "employer."  *See* 42 U.S.C. § 12111(5)(B)(i).

and legal arguments sufficiently developed in the parties' briefs, the Court is

dispensing with oral argument with respect to Defendant's motion pursuant to

Eastern District of Michigan Local Rule 7.1(f).

## I.     Factual Background

Before setting forth the facts relevant to this lawsuit, the Court will address

Plaintiff's attempt to "adopt[]" for purposes of this case the findings by

Administrative Law Judge Trek Carethers ("ALJ Carethers") in the adjudication of

the complaint Plaintiff first filed with the Equal Employment Opportunity

Commission ("EEOC").  (*See* Pl.'s Resp. Br. at 7, ECF No. 23 at Pg ID 174.)

Plaintiff filed a charge of discrimination with the EEOC on May 28, 2015,

following her February 6, 2015 termination as a postal employee.  A hearing was

held before ALJ Carethers on May 11, 2016.  (*See* Pl.'s Resp. Ex. 1, ECF No. 23-

1.)  ALJ Carethers issued a written decision in Plaintiff's case on February 26,

2017.  (Compl. Ex. 2, ECF No. 1 at Pg ID 12-27.)  The Postal Service issued its

Notice of Final Action on March 7, 2017.[2]  (*Id.* Ex. 3, Pg ID 28-29.)  Upon the

_____

[2] ALJ Carethers concluded that Plaintiff's disability was a motivating factor in the
Postal Service's decision to terminate her, but that the Postal Service would have
taken the same action even if it had not considered the discriminatory factor.
(Compl. Ex. 1 at 14, ECF No. 1 at Pg ID 26.)  Because in that instance the
complainant is not entitled to personal relief (i.e., personal damages, reinstatement,
hiring, promotion, or back pay), ALJ Carethers denied Plaintiff personal relief and
ordered the Postal Service to conduct disability discrimination training for the
decision maker in Plaintiff's case and to pay Plaintiff's attorney's fees.  (*Id.* at 15,
Pg ID 27.)

conclusion of the administrative process, Plaintiff could sue in federal court to enforce the administrative decision or, if unhappy with the decision, bring a claim to obtain *de novo* review. *See Ellis v. England*, 432 F.3d 1321, 1325 (11th Cir. 2005); *Morris v. Rumsfeld*, 420 F.3d 287, 290 (3d Cir. 2005). Plaintiff initiated this lawsuit challenging the agency's decision rather than seeking to enforce it. (*See* Compl. at 7, 9, ECF No. 1 at Pg ID 7, 9.)

As the Circuit Court for the District of Columbia has explained: "… federal employees who secure a final administrative disposition finding discrimination and ordering relief have a choice: they may either accept the disposition and its award, or file a civil action, trying *de novo* both liability and remedy. They may not, however, seek *de novo* review of just the remedial award …." *Scott v. Johanns*, 409 F.3d 466, 471-72 (D.C. Cir. 2005), *cert. denied*, 546 U.S. 1089 (2006); *see also Laber v. Harvey*, 438 F.3d 404, 423-24 (4th Cir. 2006) ("to claim entitlement to a more favorable award [than granted by the EEOC], the employee must place the employing agency's discrimination at issue"); *Ellis*, 432 F.3d at 1324; *Timmons v. White*, 314 F.3d 1129, 1233 (10th Cir. 2003); *Massingill v. Nicholson*, 496 F.3d 382, . When a federal employee seeks *de novo* review, the federal district court "is not bound by the results of the administrative process." *Ellis*, 432 F.3d at 1325 (citing *Morris*, 420 F.3d at 294); *see also Boone v. Rumsfeld*, 172 F. App'x 268 (11th Cir. 2006) (holding that federal employer was not collaterally estopped from

arguing that employee was a qualified disabled individual, even though EEOC decision had found employee disabled).

Nevertheless, in the "Statement of Facts" section of her response brief, Plaintiff attempts to adopt ALJ Carethers findings of fact rather than identifying evidence material to her discrimination claim. (Pl.'s Resp. Br. at 7, ECF No. 23 at Pg ID 174.) As those findings are not binding here, the Court will not incorporate them unless supported by evidence properly considered under Rule 56 of the Federal Rules of Civil Procedure. Plaintiff does cite in her response brief to the transcript of the hearing before ALJ Carethers and the declaration of Phil Ashford, both of which are attached to her response brief. (*Id.*) To the extent relevant, the Court will incorporate that evidence here.

Plaintiff was hired by the Postal Service as a career full-time letter carrier at the Inkster, Michigan post office.[3] As a city letter carrier, Plaintiff's job duties required her to deliver and collect mail on foot or by vehicle, case mail in delivery sequence, return collected mail to the post office, and provide customers with postal information upon request. (*Id.* Ex. 2, ECF No. 18-3.)

---

[3] According to Plaintiff's representative at the EEOC hearing, Plaintiff started working for the Postal Service at its Westland Post Office in February 2013. (*See* Pl.'s Resp. Ex. 1 at 7, ECF No. 23-1 at Pg ID 187.) She resigned three months later. (*Id.*) Plaintiff then got a job at the Brighton Post Office beginning August 10, 2013. (*Id.* at 8, Pg ID 187.) Plaintiff subsequently spent time at the Inkster Post Office before receiving her appointment to a career position at that location. (*Id.* at 9, Pg ID 187.)

Plaintiff's 90-day probationary period began on November 29, 2014, and was to expire on February 26, 2015. (Def.'s Mot. Ex. 1, ECF No. 18-2 at Pg ID 100.) Under the terms of a collective bargaining agreement between the Postal Service and the union representing postal employees, the Postal Service may terminate probationary employees at any time during their probationary period without establishing "just cause" and employees separated during that period are contractually barred from filing a grievance concerning the separation. (*Id*. Ex. 17 at Art. 12 § 1, ECF No. 18-18 at Pg ID 156.)

Christopher Baker was the Officer in Charge at the Inkster Post Office and was Plaintiff's second level supervisor. (*Id*. Ex. 3 at 1, Ex. 18-4 at Pg ID 103.) Tim Pendleton was employed as Supervisor of Customer Service and was Plaintiff's immediate supervisor. (*Id*. at 4, Pg ID 106.)

On December 4, 2014, shortly after Plaintiff's probationary period started, she called Mr. Baker to request "emergency" leave. (*Id*. Ex. 4 at 66, ECF No. 18-5 at Pg ID 119.) Plaintiff informed Mr. Baker that she needed leave to fix the brakes on her personal vehicle and renew her driver's license. (*Id*.) Mr. Baker informed Plaintiff that she needed to document her emergency as such documentation is required for emergency annual leave. (*Id*. at 66-67, Pg ID 119.) When Plaintiff brought in her documentation, it reflected that Plaintiff's license had expired on November 21, 2014—meaning that she had been working as a letter carrier and

5

driving Postal Service vehicles without a valid driver's license between that date and December 4, when she renewed her license. (*Id*. at 67, Pg ID 119.) Although he could have terminated Plaintiff, Mr. Baker decided not to discipline her and give her a break. (*Id.* at 67-69, Pg ID 119.) Mr. Baker provided that any disciplinary action would have looked negative upon her final review. (*Id*.)

On December 26, 2014, Plaintiff tripped on the sidewalk while delivering mail and injured her foot and ankle. (*Id.* at 26, Pg ID 115.) Plaintiff went to Garden City Hospital and was treated for an ankle injury and foot sprain. (*Id.* Ex. 6, ECF No. 18-7.) Plaintiff was unable to work due to her injury from December 26, 2014 through January 23, 2015. (*Id.* Ex. 4 at 26, ECF No. 18-5 at Pg ID 115.) However, Plaintiff came to the Inkster Post Office on or about January 7, 2015, to provide medical documentation supporting her leave. (*Id*. 26-27, Pg ID 115.)

While Plaintiff was at the post office, Mr. Baker conducted her 30-day review, which covered November 29 through December 29, 2014. (*Id*.) Plaintiff received "U's" for "unacceptable" in the areas of Work Quality, Dependability, and Work Methods, and "N's" for "Not Observed" in the areas of Work Quantity, Work Relations, and Personal Conduct.[4] (*Id*. at 28, Pg ID 115; *Id*., Ex. 9 at 1, ECF No. 18-9 at Pg ID 137.)

---

[4] In Defendant's brief in support of her motion, Defendant states that Plaintiff also received a "U" for Work Relations. (Def.'s Br. in Supp. of Mot. at 7, ECF No. 18 at Pg ID 83.) It appears from the Employee Evaluation and/or Probationary

Plaintiff returned to work on January 23, 2015. At that time, she did not provide documentation stating she had physical restrictions. (Def.'s Mot. Ex. 3 at 2, ECF No. 18-4 at Pg ID 104.) On January 27, 2015, Mr. Baker conducted an accident interview meeting with Plaintiff and her union steward. (*Id*. Ex. 9 at 1, ECF No. 18-10 at Pg ID 138; *see also* Ex. 3 at 4, ECF No. 18-4 at Pg ID 106.) During the meeting, Mr. Baker "emphasized the importance of working safely as to avoid accidents." (*Id*.) Later that day, Mr. Baker observed Plaintiff not wearing her seatbelt while driving a postal vehicle on Inkster Road. (*Id*.)

As to this incident, Plaintiff testified at the EEOC hearing that she had just returned to her vehicle in a parking lot when she was approached by Mr. Baker. (Pl.'s Resp. Ex. 1 at 30, ECF No. 23-1 at Pg ID 193.) Mr. Baker testified that he saw Plaintiff in her postal vehicle preparing to make a left turn onto Inkster Road from the parking lot, not wearing her seatbelt. (*Id*. at 69-71, Pg ID 202-03; *see also* Ex. 10, ECF No. 18-11.) Mr. Baker pulled into the lot, exited his vehicle, approached Plaintiff, and informed her that it is a requirement to wear a seatbelt while driving a postal vehicle. (*Id*.)

Two days later, on January 29, 2015, Mr. Baker and Mr. Pendleton were conducting field observations when they observed Plaintiff driving again without

Report, however, that Mr. Baker in fact gave Plaintiff an "N" for "Not Observed" for this category. (*Id.*, Ex. 8, ECF No. 18-9.) This is not material to Plaintiff's claim, however.

wearing a seatbelt. (Pl.'s Mot. Ex. 1 at 75, ECF No. 23-1 at Pg ID 204; *see also* Def.'s Mot. Ex. 3 at 4, ECF No. 18-4 at Pg ID 106.) According to Mr. Baker and Mr. Pendleton, Plaintiff was driving her vehicle on a driveway leading away from an apartment building to Michigan Avenue, when they intercepted her at a stop sign. (*Id.* at 75-76, Pg ID 204; Pl.'s Mot. Ex. 1 at 113, ECF No. 23-2 at Pg ID 213.) Plaintiff testified at the EEOC hearing that she was in the process of putting her seatbelt on and then saw Mr. Baker and Mr. Pendleton pull up, so she let the seatbelt go to get out of the vehicle and speak to them. (Pl.'s Resp. Ex. 1 at 38-39, ECF No. 23-1 at Pg ID 195.)

Mr. Baker and Mr. Pendleton initially stopped Plaintiff during her route on January 29 because she was delivering mail out of sequence. Before Plaintiff left the post office to complete her route that day, Mr. Baker had instructed her to complete her assignment in the order the route is set up. (Def.'s Mot. Ex. 12, ECF No. 18-13.)

On February 3, 2015, Mr. Pendleton completed an Administrative Action Request form to remove Plaintiff from her position with the post office.[5] (Def.'s

---

[5] In the brief in support of her motion, Defendant states that Mr. Baker contacted labor relations requesting administrative action regarding Plaintiff. (*See* Def.'s Br. in Supp. of Mot. at 8, ECF No. 18 at Pg ID 84.) The form is completed by Mr. Pendleton, however. At the administrative hearing, Mr. Baker in fact did not claim that he signed the form. Rather, he testified that "*we* put in a request to the District labor relations to have [Plaintiff] terminated." (Pl.'s Resp. Ex. 1 at 81-82, ECF

Mot. Ex. 13, ECF No. 18-14.)  Mr. Pendleton marked the following reasons for the

request: failure to follow instructions, unsafe practices, and failure to be regular in

attendance.  (*Id*.)  He provided the following description:

> Employee is a city carrier in her Probationary Period.  The employee's
> probationary period expires on February 26, 2015.  Management has
> taken all the required steps to mentor this employee to success.
> However, this employee has not performed as required.  The
> employee was informed of the requirement to be in regular
> attendance.  The employee has incurred several unscheduled absences
> during her probationary period.[6]  The Management completed the
> 1750 and reviewed the employee's attendance with her.  Management
> has addressed the employee's work methods with her; specifically
> safety.  The employee has been observed working unsafely on at least
> two occasions.  Each of those times the employee was observed
> driving a Postal vehicle without wearing her seat belt.  This happened
> on 1/27/15 and again on 1/29/15.  On 1/27/15 the OIC observed her
> driving without a seatbelt on and gave her instructions to wear her
> seatbelt.  The [sic] Despite management's attempt to correct the
> employee's unsafe work methods she has not done so.  She was again
> observed by both the supervisor and the OIC on 1/29/15 driving with
> out [sic] her seatbelt.  The employee has demonstrated she does not
> follow the instructions of her management/supervisors.  Management
> instructed her on 1/29/15 to complete her route in the order it is set up
> for.  Later that day management observed her doing the route out of
> order.

(*Id*.)  It was Mr. Baker's decision, however, to terminate Plaintiff's employment

and he had the authority to do so without receiving approval.  (Pl.'s Resp. Ex. 1 at

---

No. 23-2 at Pg ID 205-06.)  Mr. Baker did testify, however, that it was his decision
to terminate Plaintiff.  (*Id.* at 83, Pg ID 206.)

[6] In addition to the attendance issue within a few days of starting her probationary
period at the Inkster Post Office, Mr. Baker testified that Plaintiff had prior
attendance issues while assigned to other post offices.  (Pl.'s Resp. Ex. 1 at 66-68,
Pg ID 23-1 at Pg ID 202.)

81-83, ECF No. 23-2 at Pg ID 205-06.) He explained that it was the Postal Service's policy to nevertheless get a recommendation from the Labor Relations Department before acting. (*Id*.)

On February 5, 2015, Mr. Baker conducted a 60-day review with Plaintiff in the presence of her union steward. (Pl.'s Resp. Ex 1 at 44, ECF No. 23-1 at Pg ID 196.) Plaintiff received "U's" in all areas. (Def.'s Mot. Ex. 8, ECF No. 18-9.) Mr. Baker explained to Plaintiff that he "was giving her an unacceptable rating due to her failure to work safely, failure to follow instructions, and failure to maintain regular attendance."

On February 6, 2015, Plaintiff reported to work. Before leaving to deliver her route, Plaintiff informed Mr. Baker that her ankle was bothering her, and she was planning to go to the hospital to have it reexamined after she completed her route. (Pl.'s Resp. Ex. 1 at 47-48, ECF No. 23-1 at Pg ID 197.) Mr. Baker said okay. (*Id*. at 48, Pg ID 197.) After Plaintiff left to complete her route, Jeffrey Price from Labor Relations contacted Mr. Baker and told him to go ahead and issue the termination for Plaintiff. (*Id*. at 95, Pg ID 209.)

Mr. Baker then asked Plaintiff's union representative, Phil Ashford (who was preparing to leave for his route) to "stick around" because Mr. Baker was going to have Plaintiff return from the field and was going to let her go. (Pl.'s Resp. Ex. 2 at 2, ECF No. 23-3 at Pg ID 230.) In a memo he prepared and signed

on June 7, 2015, Mr. Ashford wrote that when Mr. Baker said he was going to let Plaintiff go, he also said Plaintiff's "a safety hazard to the postal service." (*Id*.) However, at the EEOC hearing on May 11, 2016, Mr. Ashford testified that Mr. Baker said he had to let Plaintiff go because "[s]he's going to cost the Post Office too much money." (Pl.'s Resp. Ex. 1 at 129, ECF No. 23-2 at Pg ID 217.) Mr. Ashford testified that Mr. Baker made a similar comment during Plaintiff's 60-day review. (*Id*.)

Mr. Baker then instructed another letter carrier to go to Plaintiff's route and instruct Plaintiff to return to the office. (*Id*.) When Plaintiff returned, Mr. Baker and Mr. Pendleton met with her in Mr. Ashford's presence and told Plaintiff she was being terminated. (*Id*.) The Notice of Separation indicates that Plaintiff was terminated on February 6, 2015, for "Failure to Adhere to Safety Rules and Regulations on January 27 and 29, 2015. (Def.'s Mot. Ex. 15, ECF No. 18-16.)

Walter Gregory, the Executive Vice President of the union representing Postal Service employees, testified at Plaintiff's EEOC hearing that in his ten or fifteen years of experience handling employee grievances, he had never had a case before Plaintiff's where an employee was fired for not wearing a seatbelt. (Pl.'s Resp. Ex. 2 at 139, ECF No. 23-2 at Pg ID 220.)

## II.     Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact."  *Id*. at 323.  Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).  To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient.  *See Liberty Lobby*, 477 U.S. at 252.  The court must accept as true the

non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).  Notably, the trial court is not required to construct a party's argument from the record or search out facts from the record supporting those arguments.  *See, e.g., Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) ("the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact") (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)); *see also InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied* 494 U.S. 1091 (1990) ("A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."). The parties are required to designate with specificity the portions of the record such that the court can "readily identify the facts upon which the . . . party relies[.]"  *InterRoyal Corp.*, 889 F.2d at 111.

## III.    Applicable Law

The Rehabilitation Act (or "Act") prohibits federal agencies and the United States Postal Service from discriminating against an "otherwise qualified individual with a disability" solely by reason of his or her disability and creates a private right of action against covered entities for such discrimination.  29 U.S.C. §§ 794, 794a.  The Act expressly provides that a discrimination complaint under the statute will be decided based upon the standards applicable to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213.  *See* 29 U.S.C. § 794(d); *see also McPherson v. Mich. High School Athletic Ass'n*, 119 F.3d 453, 459-60 (6th Cir. 1997).  Claims arising after January 1, 2009 are governed by the terms of the ADA Amendments Act of 2008 ("ADAA").

A plaintiff claiming disability discrimination in violation of the Rehabilitation Act must show that (1) she is a disabled individual; (2) she is "otherwise qualified" to perform the job requirements, with or without reasonable accommodation; and (3) the discharge was solely by reason of the plaintiff's disability.  *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007) (quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996)).  Absent direct evidence of discrimination, the burden-shifting framework outlined in *McDonell Douglas Corporation v. Green*, 411 U.S. 792 (1973), is used to evaluate the plaintiff's showing.  *See Jones*, 488 F.3d at 403-04.

Under that framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination by proving: (1) she is disabled; (2) she was otherwise qualified for the position, with or without reasonable accommodation; (3) she suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007) (quoting *Monette.*, 90 F.3d at 1186); *see also Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011) (recognizing "[t]hat there has been some confusion in th[e Sixth C]ircuit as to the proper test for establishing a *prima facie* case of employment discrimination under the ADA" with some courts adopting a three-part test and other courts applying a five-part test and concluding that the latter formulation is "the proper test."). If the plaintiff satisfies this showing, the burden shifts to the employer to demonstrate a legitimate, nondiscriminatory reason for the adverse action. *Jones*, 448 F.3d at 404 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). The plaintiff then must prove "that the employer's proffered reason was in fact a pretext designed to mask illegal discrimination." *Id*.

An individual is disabled within the meaning of the Rehabilitation Act if he or she:

(A) has "a physical or mental impairment that substantially limits one or more major life activities of such individual";

(B) has "a record of such an impairment"; or

(C) is "regarded as having such an impairment …."

*See* 29 U.S.C. § 705(9)(b) (incorporating definition in 42 U.S.C. § 12102(1)). The regulations implementing the ADA provide that an impairment is substantial "if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). "Major life activities" include, but are not limited to, "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting … and working[.]" *Id.* § 1630.2(i)(1)(i).

The regulations provide that "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.* The regulations further instruct that "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." *Id.* § 1630.2(j)(1)(i). The term "is not meant to be a demanding standard." *Id.* Nevertheless, "not every impairment will constitute a disability within the meaning of [the statute]." *Id.* § 1630.2(j)(1)(ii). Moreover, the Sixth Circuit has held that the plaintiff must come forward with some evidence supporting his or her

disability to survive summary judgment.  *See Neely v. Benchmark Family Servs.*, No. 15-3550, 2016 WL 364774, at *4 (6th Cir. Jan. 26, 2016).

Notably, the ADAA altered the meaning of "disability" under the ADA and therefore the Rehabilitation Act.  As such, courts must use caution in relying on cases decided before the amendment or where the amendments did not apply.

Congress enacted the ADAA, at least in part, because it concluded that courts were interpreting the ADA too narrowly and were denying protection to individuals Congress intended to protect.  *See* ADA Amendments Act of 2008, Pub. Law 110-325, 122 Stat. 3553 Sec. 2(a)(5).  As relevant to Plaintiff's case, Congress was responding to the Supreme Court's holding in *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002), that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives.  The impairment's impact must also be permanent or long term."  *See* ADA Amendments Act of 2008 Sec. 2(b)(4)-(5).

Regulations enacted as part of the ADAA's implementation provide that the "effects of an impairment lasting or expecting to last fewer than six months can be substantially limiting within the meaning of this section."  29 C.F.R.

§ 1630.2(j)(1)(ix).  The Appendix to Part 1630 elaborates with respect to

§ 1630.2(j)(1)(ix):

> [A]n impairment does not have to last for more than six months in order to be considered substantially limiting under the first or the second prong of the definition of disability. For example, as noted above, if an individual has a back impairment that results in a 20-pound lifting restriction that lasts for several months, he is substantially limited in the major life activity of lifting, and therefore covered under the first prong of the definition of disability. At the same time, "[t]he duration of an impairment is one factor that is relevant in determining whether the impairment substantially limits a major life activity. Impairments that last only for a short period of time are typically not covered, although they may be covered if sufficiently severe." Joint Hoyer-Sensenbrenner Statement at 5.

29 C.F.R. Pt. § 1630, App. (July 18, 2016).  As the appendix suggests and the

regulations provide: "The determination of whether an impairment substantially

limits a major life activity requires an individualized assessment."  29 C.F.R.

§ 1630.2(j)(1)(iv).

## IV.    Analysis

Defendant first argues that she is entitled to summary judgment because

Plaintiff cannot satisfy the first, fourth, and fifth elements of her prima facie case—

that is, that Plaintiff is a person with a disability as a matter of law; Defendant

knew or had reason to know of her disability; and her position remained open, she

was replaced by a non-disabled person, or that similarly situated non-disabled

employees were treated more favorably.  The Court agrees and therefore finds it

unnecessary to address the remaining steps in the *McDonnell-Douglas* formula.

18

According to Defendant, Plaintiff cannot show she is a person with a disability as a matter of law because, at most, she suffered a temporary ankle/foot sprain for which she suffered no limitations to any major life activity when she returned to work.  In response to Defendant's motion, Plaintiff presents no evidence to demonstrate that she is a person with a disability, despite recognizing that it is her burden to make this showing.  (*See* Pl.'s Resp. Br. at 12, ECF No. 23 at Pg ID 179, citing *Jasany v. United States Postal Serv.*, 755 F.2d 1244 (6th Cir. 1985).)  Instead, Plaintiff relies solely on ALJ Carethers' findings to show that she was disabled.[7]  As indicated earlier, however, those findings are not binding here, where the Court must conduct a *de novo* determination of Plaintiff's claim.

The evidence establishes that Plaintiff experienced an ankle injury and/or foot sprain which caused her to be absent from work for one month.  She returned to work with no medical restrictions, however.  There is no evidence that Plaintiff

---

[7] Some of ALJ Carethers' findings are supported by evidence in the record (e.g., the sworn testimony at the EEOC hearing); however, his findings regarding whether Plaintiff was an individual with a disability are based on materials that have not been presented to this Court.  Specifically, ALJ Carethers cites to the Report of Investigation to find: "As a result of Complainant's high ankle sprain, she could not walk or stand for any significant period of time.  When she did walk, she experienced pain."  (*See* Compl. Ex. 1 at 2 ¶ 7, ECF No. 1 at Pg ID 14.)  There is no time reference within the ALJ's finding, however.  Thus, it is unclear if the ALJ is referring to the period immediately after the accident and while Plaintiff was on leave or the period after she returned to work.  Notably, there is no evidence that Plaintiff suffered any limitations or pain after returning to work and prior to her termination and she returned to work without restrictions.

was substantially or even moderately limited in any major life activity after she

returned to work.  In fact, Plaintiff does not show that she had *any* limitations due

to her injury or sprain after she returned from leave.  Plaintiff's temporary, short-

term, and non-severe condition does not satisfy the definition of disability, even

under the ADAA's broad coverage.[8]  *See, e.g., Bush v. Donahoe*, 964 F. Supp. 2d

401, 417-21 (W.D. Pa. 2013) (collecting cases and finding that the plaintiff's

sprain to her right ankle/foot that was temporarily treated with a protective boot

and did not include any work restrictions did not constitute a disability); *Koller v.*

*Riley Riper Hollin and Colagreco*, 850 F. Supp. 2d 502, 513-14 (E.D. Pa. 2012)

(finding no disability resulting from the plaintiff's injury to his anterior cruciate

ligament ("ACL") for which he experienced trouble staying awake and

concentrating, difficulty moving and driving, and pain for several weeks post-

surgery, and where the plaintiff alleged no facts regarding his condition at the time

---

[8] The Court recognizes that the cases it cites in support of this conclusion are not binding.  However, the Court found no Sixth Circuit decisions addressing a similar temporary, short-term, and non-severe condition in which the ADAA was applied. The Sixth Circuit decisions the Court located, some of which Defendant cites in the brief in support of its motion (*see* Def.'s Br. in Supp. of Mot. at 13-14, ECF No. 18 at Pg ID 89-90) were decided before the ADAA became effective or the court did not apply the amendments because the alleged discriminatory conduct occurred before they were effective.  As Congress enacted the ADAA because it concluded courts were interpreting the ADA too narrowly, this Court declines to rely on cases not applying the amendments.  Defendant should be careful when citing such cases to a court and relying on definitions of "disability" that Congress specifically rejected when enacting the ADAA.

of termination); *McKenzie-Nevolas v. Deaconess Holdings, LLC,* No. CIV-12-570-D, 2014 WL 518086, at *4-5 (W.D. Okla. Feb. 7, 2014) (collecting cases and finding that the plaintiff's cellulitis/mastitis was not a disability where it lasted only 2 to 3 weeks and for which, at the time of her termination, she had only some muscle tenderness and intermittent pain on the left side not shown to substantially limit any major life activities).

Relatedly, Plaintiff fails to demonstrate that Defendant knew or had reason to know of her alleged disability when Mr. Baker made the decision to terminate her employment. As indicated above, there is no evidence that Plaintiff had a disability when she returned to work after injuring her ankle or foot. Nor is there evidence that Plaintiff informed Mr. Baker, Mr. Pendleton or anyone else at the Inkster Post Office prior to the decision to terminate her that she was continuing to suffer limitations due to her injury.

It is true that on the morning of February 6, 2015, Plaintiff told Mr. Baker that she was "having issues" with her ankle and that it was swollen. (*See* Pl.'s Resp. Ex. 1 at 48, ECF no. 23-1 at Pg ID 197.) However, the evidence shows that Mr. Baker already had decided to terminate Plaintiff at least three days earlier.[9] Mr. Baker was authorized to make that decision without prior approval. On

---

[9] For that reason, the Court does not find relevant Mr. Baker's purported statement to Mr. Ashford later on that date that "[Plaintiff]'s going to cost the Post Office too much money."

February 3, Mr. Pendleton signed and submitted an Administrative Action Request form to the Labor Relations Department, requesting to remove Plaintiff due to her failure to follow instructions, unsafe practices, and failure to be in regular attendance.

Under Sixth Circuit precedent, the date of termination is the date on which a decision maker with the authority to do so decides to terminate the employee. *See, e.g., Prebilich-Holland v. Gaylord Entmt. Co.*, 297 F.3d 438, 444 (6th Cir. 2002); *Burns v. City of Columbus*, 91 F.3d 836, 844 (6th Cir. 1996). In *Prebilich-Holland*, the plaintiff's supervisor called human resources to begin the process of terminating the plaintiff four days before the plaintiff told the supervisor she was pregnant. 297 F.3d at 441. Plaintiff was officially terminated two days later. *Id*. The Sixth Circuit held that the plaintiff failed to establish that her employer had actual knowledge of her pregnancy at the time of termination. *Id*. at 444. In *Burns*, a board reviewed a police officer's performance and recommended termination in May 1992, and he was officially terminated by the defendant on July 1—after notifying his employer of his medical condition. 91 F.3d at 839-40. The plaintiff's condition had not been diagnosed at the time the board recommended termination. *Id.* at 840. The Sixth Circuit found that the termination could therefore not have been predicated on the plaintiff's disability. *Id.* at 844. In the present case, therefore, the decision to terminate Plaintiff was

made on February 3, before Plaintiff told Mr. Baker that she was continuing to experience issues with her ankle.

Lastly, Plaintiff also fails to present any evidence to satisfy the fifth element of her prima facie case. In fact, in her response brief, Plaintiff does not even respond to Defendant's argument that she fails to prove this element. Even if Plaintiff could rely on ALJ Carethers' decision here, the decision provides no assistance with respect to this fifth element as it is not discussed in the decision.

## V. Conclusion

For the reasons stated, the Court concludes that Plaintiff fails to satisfy her burden of demonstrating a prima facie case of disability discrimination in violation of the Rehabilitation Act.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 18) is **GRANTED**.

s/Linda V. Parker
LINDA V. PARKER
UNITED STATES DISTRICT JUDGE

Dated: February 22, 2019

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, February 22, 2019, by electronic and/or U.S. First Class mail.

s/R. Loury
Case Manager

23